Good morning, Your Honor, and may it please the Court, I'm Joseph Palmore for Defendants. As the Court knows, we have an appeal and a cross-appeal. With the Court's permission, I'll spend ten minutes now on our appeal issues, and then ten minutes during my second time at the podium for rebuttal and the cross-appeal issues. Plaintiffs consented to receive the faxes in question when they voluntarily provided their fax numbers when registering their Medisoft software. This Court's precedent is clear that provision of a number in connection with a transaction constitutes express consent to receive communications related to the subject matter of that transaction. All of the faxes here satisfied that test. They were all either upgrades to the existing Metasoft software, which plaintiffs were using subject to a perpetual license. They were using Metasoft version 12. These faxes were about Metasoft version 16. Or they were about closely related software that was... When you say the upgrades, were those upgrades that were being provided, or were they ones you had to buy? They were ones you had to buy, Your Honor. So there's no question in this case that these were advertisements, but they were within the subject matter of the original transaction, much like the text in Van Patten was also an advertisement for GEM membership. If I buy a car, as I have, and they send me advertisements that say, well, you can trade in your car for a newer car and have lower payments. I get those in the mail all the time. Did I consent when I told the people, you know, I'm going to do my repairs at that place, did I consent to get those solicitations for upgrades from my car to a newer, better car? Well, perhaps it's a contextual inquiry, Judge Boggs. So here on the registration form, they voluntarily put in their fax number. It was not a required field. And they had the opportunity to check a box saying do not fax. They did not check that box. And so under... The law doesn't make that a difference, does it? Not by itself. If a fax is not solicited, it doesn't matter which way you went. I think not by itself. Right, but if you look at Van Patten, what Van Patten says is that when the customer there gave his phone number in connection with his application for GEM membership, that constituted express consent to receive further communications related to that subject matter. And it found that within that consent was a text that came three years later. He had only been a member of the GEM for three days, and then he canceled. Three years later, they text him. He's moved halfway across the country, different ownership of the GEM. And what this court said was that constituted that that was a consented-to communication because it related to the subject matter. Here, too, we're talking about upgrades. These aren't some completely unrelated subjects. These are upgrades to the software they were already using. It was electronic health record software meant to interact with, and complement the software that was already using. There was a quite tight nexus. And if that wasn't enough, the end-user licensing agreements that they signed would be. Because in those EULAs, they expressly agreed to they were within the express contemplation of that agreement that the defendants would be sending them information, offering them other features and services. And that's exactly what these faxes were. It was offering them other features and services. Now, so we think that under this court's decision and Van Patten and Fover, consent here is clearly established as a matter of law. The plaintiff's argument, their fundamental submission, is that that standard doesn't apply because there is a different and more demanding standard for faxes. If they're wrong about that, they don't make any argument about the subject matter nexus, that these faxes fell outside the subject matter nexus, that they're unrelated. They don't cite or discuss Fover or Van Patten at all in their brief. They've put all their eggs in one basket, which is that the standard for consent for faxes is different and harder, and in a sense requires magic words that the person has to have said, I consent to receive advertisements by fax. The Second Circuit and the Third Circuit have both looked at that argument and have rejected it, and with good reason. The language of the statute here, which is express permission or invitation, these are synonyms to express consent, which is used on the call side of the TCPA. If you look at that we recount the dictionary definitions in our brief, the Third Circuit and Cephalon went through the dictionaries too. In fact, one of the definitions of consent is permission. These words mean the same thing, and even with respect to calls under the TCPA, there's a separate provision involving marketing calls, and the consent standard there is express permission or consent. So even with respect to calls, Congress is clearly using these words interchangeably. So the same standard applies, and if the same standard applies, then we get FOBR, we get Van Patten, we get the subject matter nexus test. Would you agree that under the FCC orders the same standard does not apply? I don't agree, Your Honor. So this court looked at the FCC orders in Van Patten, and it harmonized the FCC orders with its own view of the statute. But again, if I'm remembering right, that's to do with telephone solicitation? That's to do with telephone. And the question is, does the FCC apply the same consent rule essentially for telephone and fax? And the argument on the other side of this case is that, no, they're different rules. So I want to know your position on that. Sure. So they're referring to one sentence, I think, where the FCC says something like, the test is whether a reasonable consumer would have understood that they were consenting to receive advertisements by fax. The Second Circuit, the Third Circuit, and the Eleventh Circuit in the cases that we rely on, these are all fax cases, quotes that exact same sentence. And they say that test is satisfied by the voluntary provision of a number as long as the later communications are related to the subject matter of the transaction in which that number was provided. So they're not disagreeing with that standard. They are applying it, and they're saying a reasonable consumer would understand in this situation like this. When they're filling out a form, when they're registering for software, they don't have to provide the fax number. It's not a starred field that's required, but they do put it in. They don't check the do not fax box. They've signed a licensing agreement that says that the defendants could be offering them additional services and features. Taking all that together, a reasonable consumer would understand they are consenting to receive communications by fax. And some of those communications could indeed be advertisements. That's the nature of a service or a feature. If we disagree with you and we conclude that the FCC has different rules for phone solicitation and fax solicitation, where does that leave you? Well, I mean, I think those FCC determines this leads into a little bit of the cross-appeal argument. The FCC determinations are binding. But I simply would submit to fight the hypothetical if I can that that's not the correct reading of the FCC orders. I'm not aware that other than this one sentence that's quoted by plaintiffs, there's no FCC order that applies in a situation like this involving kind of voluntary provision of a number. And, again, your sister circuits in the 2nd, 3rd, and 11th have all quoted and looked at this FCC order and concluded that it's entirely consistent with the subject matter nexus test that they apply. And then, in fact, they adopted from this court in FOBR. And under the plain terms of the statute, again, we're talking about prior express consent on the call side, prior express invitation or permission on the fax side. These are clearly synonyms. And I haven't heard any textual argument from plaintiffs about why they would mean something different, why Congress would have wanted them to mean something different, why there would be a more demanding standard for consent for faxes than there would be on telephones. Well, I can think of a reason because my understanding is Congress was thinking about the burden on the recipient and if there's a cost burden on the recipient side and there's a cost for receiving a traditional fax, you know, you've got to pay for the paper and the fax machine and whatever, in a way that doesn't exist for a phone call or, in modern times, an e-mail. So maybe there's a reason to treat them different. Well, they were also concerned about the intrusion of privacy for phones and for phone calls and texts. So they had concerns on both sides. But there's nothing in the legislative history that would suggest that any of these different concerns would have translated into a different consent standard. And there's nothing in the text of the statute that would so counsel. And, again, your sister circuits have all concluded that the same standard does apply with respect to both phone calls and faxes. And there's no magic words test on either side of the TCPA. And there was no magic words test in Van Patten. That person, when he signed up for the gym, never agreed to receive text. He never agreed to receive advertisements expressly using those words. But what this court said was his voluntary provision of the number itself constituted express consent, not to receive any communication under the sun, but to receive communications that had a nexus to the transaction. And if that nexus was established there, that nexus was established in Fober, we submit that that nexus was clearly established here. Do you want to reserve your rest of your time? Yes, thank you, Your Honor. Thank you, Your Honor. Glenn Herra on behalf of True Health Chiropractic, Inc. and McLaughlin Chiropractic Associates. I'd like to reserve five minutes for rebuttal, if I may, on my cross appeal. Okay. The district court correctly held that the defendants in this case did not obtain prior express invitation or permission from either of the plaintiffs to send fax advertisements. I'd like to address something right away, that you don't even need to look at the FCC regulations or any case law or anything. If you look at the statute, which we reproduced in our brief at page six, it tells you what is the significance of a consumer's voluntary communication of a fax number to a business. Congress already considered that. What is the significance of that? It is one element of a three-part affirmative defense that a defendant can raise, the established business relationship defense. That requires the defendant to show, one, there was an established business relationship, which is defined in the regulations. Two, the voluntary communication of the fax number from the consumer to the business, or they can also obtain it from a public directory in certain circumstances. And three, the fax has an opt-out notice that complies with the requirements of the statute and the FCC regulations. McKesson knows it can't avail itself of that defense here, because the faxes at issue contain no opt-out notice whatsoever. They made no effort to give people a way to stop these faxes from coming, which is what Congress amended the TCPA to provide for in the 2005 Junk Fax Prevention Act. It expressly requires them to do that if they want to take advantage of that defense. So there is, within the statute itself, a structural difference between the call provisions, you know, the provisions that govern calls to cell phones and residential lines, and faxes. Fax advertisements are just treated differently. So there is a difference there. So your interpretation there is sort of a one-bite rule? That is, you send the first fax with the opt-out on it, then that would be okay? The FCC considered that in implementing the JFPA, the Junk Fax Prevention Act, but the answer is no. In the 2006 order, the commission made clear that you don't get one free bite at the apple. I mean, Congress thought about that, actually, too, and the FCC thought about it. So why not? Maybe I'm missing it, but I thought you had a decent argument, but it sounds like they're going away from the statute. No, the statute's – well, wait. We might be two ships passing in the night here. If the fax complies with those three requirements, then it's legal. You don't need prior express invitation or permission. You can send an unsolicited fax. It's a common misconception. People say the TCPA bans unsolicited fax advertisements. It doesn't. It just imposes some rules, some really easy, simple rules on fax advertisers that they have to comply with. If they would just, you know, send it to people who were your customers, there's an established business relationship. They have an established business relationship. Absolutely. The voluntary communication of the fax number from the consumer to the business. They gave that in an earlier time. Right. Everybody in the Exhibit A only class did that. That's why we have such a cohesive class, by the way. And then C, a compliant opt-out notice. Complete failure. They did not have any opt-out notice whatsoever. I understand that. Okay, we're on the same page. I was just trying to understand the statute. Why isn't it – I mean, maybe it's irrelevant. Why isn't it a one-free bike? Because the first one, you haven't – It would be. If they had a compliant opt-out notice, they would be able to send it. That's what I mean. By one free bite, it means you can annoy people once. Once. Okay. So we're on the same page. Actually, you can annoy them in perpetuity until they complain. Right. But if they send an opt-out request, that has to be honored within a reasonable time as determined by the FCC, which the FCC later determined to be 30 days. Put the opt-out on it. Your first one can't be a violation. With the other two. Correct. Okay, go ahead. And arguably you could send even more within that 30-day opt-out period. That's never been tested, to the best of my knowledge. I'm sorry. Okay, got it. So the call cases – the call standards for prior express consent are different than the standards for prior express invitation or permission. The right standard for prior express invitation or permission to receive fax advertisements, in our view, is the standard that's laid out by the Seventh Circuit in physician's health source versus A-S medication. That's the circuit court that has dealt with this the best and recognized the difference between calls and recognized the significance of Congress recognizing the voluntary provision of a fax number as just an element of an EBR defense. A-S medication says to get prior express invitation or permission to send fax ads, the consumer must agree expressly, meaning in words, one, to receive advertisements, and two, to receive those advertisements by fax. It doesn't need to be in writing. It can be oral. But it has to be expressed. That's what the word express means, to be stated unmistakably, clearly, in words, right, not implied through conduct or inferred by a third party based upon the circumstances. Those things are the FCC's word for that in the 1992 order that created the standard for call cases is in effect. They say the consumer in effect gave prior express consent. Now, you can't in effect do something expressly. If something's being done in effect, there's a deduction being made. There's an inference being made by someone, some decision maker on the outside. If something's done expressly, you can say you can write a note and say, I called the person, asked if I could send this advertisement, and they said yes. You could have them check a box to opt in to receiving something. You cannot do what my opposing counsel suggested where you have a negative option, right, the do not fax box. The FCC addressed that expressly in the 2006 order. It said you can't have a negative option where you assume consent or prior express permission unless told otherwise. So I'm just going to start sending you faxes because I've got your fax number. You gave it to me, so you must want these things. I'll keep sending you faxes until you tell me to stop. It doesn't work that way. That's not express permission. So in this case, the express permission was only for, quote, services and features. I mean, they did consent to some things. Judge Gilliam's opinion deals with this. The EULA Section 2.1.2, he calls it a generic and somewhat cryptic disclosure that certain information may, quote, assist McKesson in, and now he's quoting the EULA, offering features and services. It doesn't say how they're going to offer features and services. It doesn't say they're going to be advertisements, and it doesn't say they're going to be sent by fax. And, you know, you have to tell people that. I mean, under the rules, you have to tell them we're going to send you faxes and they're going to be fax advertisements in order to be expressed permission. Do you distinguish at all between communications about upgrades versus communications about other software? Sure. And to answer Judge Boggs' question from before, earlier, obviously, McKesson's position would be yes. Once you voluntarily give your fax number to the car dealership, they can send you, you know, advertisements to upgrade, you know, to trade in your car and get the next, the newest model with impunity. I mean, I don't even know if there would be a way to cancel that kind of express consent, which is one of the things Congress was concerned about in the JFPA. They wanted to give people a way, regardless of whether they had given prior express permission or not, the fax advertiser has to tell you how to stop the faxes from coming, right? So you're not distinguishing between the two? I'm sorry, maybe I didn't directly answer your question. No, I mean, the question is, assuming that there is some form of consent here, is there a difference between communications about upgrades and software and additional, selling additional services? No, they're all advertisements, Your Honor. They're all unsolicited. Thank you. Even if it were like one of these, we've discovered this terrible flaw in your software and here's how to fix it. You know, not selling anything. Well, if you're not selling anything, that's a tougher question. Well, I mean, isn't that, to be realistic, isn't that what the purpose of you as the consumer giving them some information is that that is about the services and features of what you have already? You know, your thing is going to blow up in two weeks unless you do something. The FCC addressed that in the 2006 commission order. There's a section on transactional communications where it says, if it just relates to a product that you've already purchased and it's not asking you to buy a subsequent product, then it's not an advertisement. So the FCC has thought about that. They've issued a lot of rules over the years on faxes and calls, and they're different. They don't usually treat them together in the same order. There have been exceptions to that, but they're usually different. I'd like to move on to my cross-appeal. So the district court initially split the certified class into the online fax services class and the standalone fax machine class. It later entered summary judgment against the online fax services class and decertified the standalone fax machine class. All of these rulings are based on the district court's erroneous conclusion that the AmeriFactors Bureau ruling regarding online fax services is a final order of the Federal Communications Commission made reviewable by Section 402A of the Communications Act. It clearly is not. The AmeriFactors Bureau ruling was issued by a man named Patrick Weber, the chief of the Consumer and Governmental Affairs Bureau. He is an employee of the FCC. He's not there anymore. You know, he was in the last administration. He is not a commissioner. He is not the commission, the five commissioners appointed by or nominated by the president and seated with the advice and consent of the Senate. Nor is he an Article III judge. He has no jurisdiction to tell Judge Gilliam how to interpret the Telephone Consumer Protection Act. That simply cannot be the case. It's a closer question, the question that was at issue in the PDR network case that went to the Supreme Court. I'm counsel for the plaintiff in that case. It was a closer issue there because you had an order that was clearly a final order of the FCC. It was issued by the commission, right? It says right at the top, by the commission. It's signed by the chairman of the commission from 2006. And there the question was, does the Hobbs Act, 28 U.S.C. 2342.1, which vests exclusive jurisdiction in the Court of Appeals to determine the validity of a final order of the commission, does that mean a district court is required to follow the FCC's interpretation in that final order? The Supreme Court didn't decide that question. It kicked the case back down to the Fourth Circuit, which issued its decision the other day, by the way, reversing the district court's dismissal. But there at least it was a close question because the Hobbs Act, you know, there are circuit court cases that say that, and there are some that go the other way. But here it's not even close because it just doesn't make sense that a bureaucrat, you know, chief of the Consumer and Governmental Affairs Bureau, can tell an Article III judge nominated by the president and seated. How do you deal with the statute that says they can delegate their functions? Sure. The regulations show how to do it. I mean, do you have any functional complaint about the way that they followed the regulations, cited the regulations? So the question is, are you saying that the statute that allows the FCC to delegate is itself, you know, in some way invalid, unconstitutional? No. It says that they shall have the same force and effect, and then it's reviewed. I mean, that's the statutory. I'm reviewing it right now. My client, career counseling. I understand that. Filed the application for review. I understand that. So. I mean, to put it differently, you have a certain gripe in the sense that it seems to be half-baked, except that's what the statute says. So there are a couple of things that occurred to me as to how you could have done it. That is, you could have asked the district court to stay its proceedings until the FCC took up the appeal. And I take it you didn't do that. No. I take it you could have also asked the commission to stay the bureaucrats, what you call the bureaucrats. That is, it's a function of the FCC. And you didn't do that. That's correct. And if you had done that, you could have appealed a failure to stay. No. Why not? That is not appealable, Your Honor. Why not? Isn't it an order of the commission, the full commission? It's not made reviewable by Section 402A of the Communications Act. It's not the kind of order, an order denying a motion to stay. You think it's not specific, even though it is an order of the commission? It's not made reviewable by Section 402A of the Communications Act. So we have to look at 407. I haven't researched that independently, but I have to look at 47 U.S.C. 402A and see if an order denying a stay would be the type that's made reviewable. I'll let you go on that one for the time being. But I will definitely say, because we have the international bank card case from the D.C. Circuit, that the bureau order itself is not made reviewable by Section 402A. No, that's easy. And the defendants agree, by the way. They agree it's not a final order because they say they concede that bureau-level orders are not in and of themselves final orders of the FCC. So they concede that. And they concede that it's not made reviewable by Section 402A. So when you read the Hobbs Act, it's plainly not covered. So the whole rationale for this court's decisions in Hamilton and Wilson is that the reason the district court has to follow the interpretation of the agency that's covered, the covered Hobbs Act ruling, is because if the district court were to interpret the statute differently than the agency, then a fortiori the court has determined that the FCC's interpretation is invalid. It's determined the validity of the interpretation. So we're back to the question of what is the agency? Yeah. But once you take that exclusive jurisdiction part out, that exclusive jurisdiction to determine the validity lies in the court of appeals because it's a final covered order, once we conclude that it is not a covered final order, that rationale falls apart. And it's just an opinion. It's just an advisory opinion by this bureau. You know, it has no legal significance in and of itself. Maybe it would be a court of Skidmore deference, right? You would say, well, a court would say, well, I'll follow it to the extent it has the power to persuade. That's what the Fourth Circuit just held in the PDR network. Well, not just held, but held in 2020 in the remand from the Supreme Court in interpreting a different or in applying a different FCC interpretation. I'll save four minutes of my time for rebuttal, please. Thank you. Thank you, Your Honor. Two quick points in rebuttal. Counsel said that just voluntarily providing a number does not constitute express consent, that it's implied consent. The word express also appears in the TCPA call provision. This court in Van Patten looked exactly at that word. And it said express consent is satisfied when a number is voluntarily provided and the later communications fall within the subject matter nexus of the transaction in which that number was provided. This court has already crossed that bridge. And Van Patten did not require in words for the customer to say, I want to receive advertisements, I want to receive texts or phone calls. FOBR 2 both applied a provision that, like the fax provision, required express consent, and they adopted the subject matter nexus test. So this is a settled reading of that term in this circuit. The existing business relationship exception, this is the first time we've heard about this. It wasn't mentioned in the brief. But Cephalon looked at that and said, the Third Circuit's case in Cephalon, and said that doesn't come into play when you have consent, which is what we have here. And that provision is just different. As counsel indicated, you can pull someone's number off of a directory, so that's a form of implied consent. There's also not a subject matter nexus limitation. You can send communications on anything. So it performs a different role under the statute. Turning to the cross-appeal issue, I think the district court got this right. The statute clearly differentiates between telephone facsimile machines on the one hand and computers or other devices on the other. And online fax services clearly fall in the latter category. The FCC has so found, and that is binding in this proceeding. But even if it weren't, it's clearly correct as a matter of elementary statutory construction. The FCC's AmeriFactors order walks through the statute quite carefully. And it explains that Congress was quite comprehensive in identifying the kind of equipment or technology that could be used to transmit a fax. It can be a telephone facsimile machine. It can be a computer. It can be an other device, so pretty much anything. But then later in the very same sentence, when it's talking about the technology that would be used to receive it, it was laser-focused on only one thing, telephone facsimile machine. And that's a defined term under the statute. It has equipment, a piece of equipment that has the capacity to print images or text that are received over regular telephone lines. If you take a step back, think about when Congress enacted this in the early 1990s, what Congress was clearly thinking about was the big, boxy fax machine that sat on the counter. That's what they were thinking about. That's what the definition shows. And that's what the distinction between computer or other device on the one hand and telephone facsimile machine shows. And this goes back to our colleague, Judge Forrest, about the legislative history. If you look at what Congress was concerned about, they were concerned about advertisers imposing costs on the recipients through paper and ink, and they were concerned about tying up regular phone lines. Neither of those concerns is even remotely implicated for online fax services, which send the faxes as PDF attachments to e-mails. They don't tie up phone lines. They don't have to be printed unless you want to. You can just go through and delete them. They don't implicate any of the concerns underlying the statute. And, again, those concerns are reflected in the plain text of the statute and its distinction between computers and other devices and telephone facsimile machines. The Amerifactor's reading of the statute gives effect to that very conscious textual choice that Congress made. Plaintiff's position completely obliterates it, because under their view, any computer, I guess any iPhone you can print from an iPhone, really anything is a telephone facsimile machine, as long as it can send a signal to a printer and have something printed. But the printer is, of course, a different piece of equipment. It's not the all-in-one modem transcription printing device of the kind that's reflected in the definition of the statute. I think your argument has some persuasive weight to it. What I'm struggling with here is I'm not sure that we as a court can just decide this interpretive question on our own. And I would like you to address the Amerifactor's case or order and what we do with that and whether that's binding on the district court and also maybe binding on us. Your Honor, we think it is binding under this court's precedent. The argument that Mr. Harris made is that it's not binding because it was made by the staff of the FCC. But, of course, Congress provided that staff orders will have the same force and effect as orders of the full commission. And it's part of the same scheme, exclusive scheme of review. It's just a step further back on the road, right? There's a step that has to be taken. Application for review has to be filed, which it has been. But then the full commission has to weigh in. And then if someone's dissatisfied with that, then they go up through the Hobbs Act under the exclusive review provision. So it's binding in the exact same way that a final order of the commission would be. But I want to get to your point about can you even go to the statute because I think you can. And I want to be careful about this because a lot of the court's opinions do describe this as a jurisdictional question, right? U.S. West, Wilson. But I think what they mean is, of course, the statutes we're talking about here are jurisdictional judicial review statutes. But I think they're best read to say that the FCC's determination is conclusively binding on the merits. In a way, if you think about issue preclusion, an issue has been decided by another forum, and it's binding. And the district court in private party litigation or this court in appellate review is not free to disagree. But that's a merits question. I think the court could bracket whether the AmeriFactors order is binding and then reach the same conclusion, not a different one, because it is binding on the merits, but the same conclusion based on its own review of the statute. I mean, I guess I don't understand what distinction you're trying to draw with that argument. Because if it's binding on the merits, we have to reach the same decision that the FCC reached. Why would we do our own interpretive analysis if that's the end of the day? I think what I'm saying, Your Honor, is I think the court, to the extent the court didn't want to decide this question about whether its Hobbs Act precedent applies to a bureau-level order, it could bracket that and say we're not going to decide that because we come to the same conclusion based on our own review of the statute. I think that the court, if you look at FOBR, if you look at Van Patten, the court in those cases doesn't use jurisdictional language. They say things like the FCC order is not subject to question or it's conclusively valid. And then Van Patten goes on to harmonize the FCC's view with its own reading of the statute. And so I think that the court could look at this Hobbs Act preclusion idea as an issue preclusion, that the question has been decided on the merits by a tribunal, and that is binding in the sense of this court can't disagree with it. But if you think about a case where a defendant moves to dismiss based on issue preclusion but says, and by the way, 12B6, there's a failure to state a claim also, a district court could say I'm not going to decide the issue preclusion question because I'm going to rule for you on the merits. There's no jurisdictional problem with a court doing that. And I think you could understand the Hobbs Act preclusion idea in the same way, and that would allow you to go right to the statute. But to be clear, we think the district court was correct that the bureau level order was binding because under the structure and logic of the statute, it had the same force and effect as a final order of the FCC, and there's an exclusive path to judicial review that is laid out under the statute, and we're just a step further back. And I assume you want us to ignore the fact that at least some members of the Supreme Court are questioning this whole idea of an exclusive path. Yes, Your Honor. I mean, I think that, of course, this court in public watchdogs has already said that its Hobbs Act precedent remains in force, that the Supreme Court didn't really decide anything in PDR network. It just posed some questions, and it said we're not even saying, we're not saying that the answers to those questions are relevant or not. We're just posing some questions. There was a concurrence there, but it wasn't a majority opinion. So we think that this court has already said that its Hobbs Act precedent remains in force, but that would be, of course, another reason perhaps to go on and decide the statutory question perhaps in the alternative because we think the answer on the statute is really, really clear here. The AmeriFactors got it right because of its, again, the distinction between the different kinds of equipment, the definition of telephone facsimile machine, which is equipment that itself has the ability to print, and the fact that it has to be received over a regular telephone line. Again, early 1990s, that's the way fax machines worked. These faxes here are not necessarily sent over regular telephone lines. They come across email as PDF attachments. So we think for all those reasons, the statutory answer is quite clear. All right. Thank you, Counsel. Thank you, Your Honor. Thank you. In our brief, the second brief in this appeal, I ran through in some detail the prior FCC rulings on this exact subject, and I actually went back to 1995, the 1995 commission order, to show that the FCC, until this bureau order in 2019, rejected every attempt by fax advertisers to wiggle around the rules and loosen them up and define telephone facsimile machine narrowly instead of broadly like the statute does. In 1995, the FCC ruled that that term, telephone facsimile machine, includes computer fax modem boards, which enable personal computers to transmit messages or receive messages from conventional telephone facsimile machines or other computer fax modem boards, holding that those devices are telephone facsimile machines because their equipment, if you look at the definition, 227A3, a telephone facsimile machine is any equipment with the capacity to do the relevant things. It doesn't say device. It says equipment. Because even then, fax machines were not limited to stand-alone fax machines, as counsel just said. That is not true. There were computer fax modem boards. In 2002, the FCC initiated a rulemaking on whether computerized fax servers should be treated differently. And it issued a notice of proposed rulemaking, and it issued a final order on the subject. We call that the 2003 commission order in our brief. And it ruled that when a commercial facsimile service, is the term that the FCC used, receives a fax on its fax server, computerized fax server, and then forwards it to the consumer's email inbox, that fax is sent to a telephone facsimile machine because it's sent to equipment with the relevant capacity. The commercial facsimile services described in the 2003 commission order are online fax services. What the defendants did was they changed the name. They came up with a fancy new term, called it online fax services, and asked for the exact same relief that was rejected in 2002. It's all just a word game. And because they had a more sympathetic leadership at the time, at the FCC, they got what they wanted. Okay? But this Bureau was not protecting consumers when it did that. It was protecting fax advertisers from people like me. What is your legal authority? What is your best legal authority to say that the Bureau order, as you call it, is illegitimate because it wasn't a proper exercise of FCC authority? My best authority is the only other circuit court of appeals to address this question. The Sixth Circuit in Lingas v. Curidan AG. It's from 2022. They directly address this question. They go through the 2003 commission order and the 1995 Westfax ruling, and they say these things are consistent and there is no distinction in the statute between online fax services. I don't think that's answering my question. So the Bureau order, you say, is not proper because it was made by just the subgroup within FCC as opposed to the full commission or the commissioners. What tells me that the statute says that they can delegate authority. So what tells me that that's not a proper delegation of authority? I'm not saying it's not proper. I mean, I think it's wrong, but that's going to be determined.  He could actually issue that order. I think it is not a final order of the commission made reviewable by section 428. Okay, what tells me that? What tells me that this delegation doesn't give it that finality? Because the case law is crystal clear and the statutes are crystal clear. If I tried to appeal the AmeriFactors Bureau ruling, I would be dismissed as incurably premature, which is exactly what happened in the international bank card case that we cite. I would get dismissed. I would get sanctioned probably because I know that it's incurably premature. So the statutes tell me that this is not a final order of the FCC made reviewable by section 402A, and therefore the exclusive jurisdiction rationale of Hamilton and West and all these other cases just isn't present here. Are you saying it's a final order but not a final order made reviewable by 402A? It's neither. It is not a final order, and it is not made reviewable by section 402A. So when the statute said, I mean, to me the words same force and effect sounds like the same thing as an order of the commission. It's not final, and it's not made reviewable by section 402A. I don't know how else to say that it's not covered by the Hobbs Act. It simply can't be. Thank you. All right, I thank counsel for your arguments. In the matter of True Health Chiropractic v. McKesson Corporation, that case is submitted, and we are in recess for the day.
judges: Boggs, THOMAS, FORREST